UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE EDMOND WILSON,                     Case No. 23-10863
                        Plaintiff,
v.                                        Sean F. Cox
                                          Chief United States District Judge
JOSEPH, *et al.*,
                        Defendants.       Curtis Ivy, Jr.
_____/        United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND TO DISMISS (ECF Nos. 25, 26, 31)**

## I.    PROCEDURAL HISTORY

Plaintiff Wilson's prisoner civil rights case was transferred to this District on

April 14, 2023.  (ECF No. 1).  Plaintiff alleges that the Defendants, all of whom

worked at the G. Robert Cotton Correctional Facility ("JCF"), were deliberately

indifferent to his medical needs and retaliated against him for filing grievances.

Michigan Department of Corrections ("MDOC") Defendants Garrow, Kaiser,

Landfair, Nagy, and Young moved for summary judgment on the basis of failure to

exhaust administrative remedies.  (ECF No. 25).  Defendant Biggs later moved for

summary judgment on the same basis.  (ECF No. 31).  Defendant Florek, who

worked at JCF but was employed by a third-party medical contractor, moved to

dismiss under Fed. R. Civ. P. 12(b)(6) for failure to exhaust administrative

remedies.  (ECF No. 26).  Plaintiff was ordered to file response briefs to all motions, but he filed a single response.  (ECF No. 47).  The undersigned considers the motions fully briefed and ready for report and recommendation.

For the reasons below, the undersigned **RECOMMENDS** that Defendants Garrow, Landfair, Young, Nagy, and Bigg's motions for summary judgment be **GRANTED** and that Defendants Keiser and Florek's motions be **GRANTED IN PART**.

## II.   COMPLAINT ALLEGATIONS

At the time of the events alleged, Plaintiff was housed at JCF.  This prison did not provide ladders for inmates assigned to the top bunk, so they would have to climb up to get into bed.  (ECF No. 1, PageID.4).  On November 1, 2022, Plaintiff was trying to climb to his top bunk but fell.  He hurt his back and his legs were numb.  (*Id.*).  He called for help as he laid on the floor in pain.  Defendant Joseph came to the cell door and saw him lying on the floor, crying for help, yet Joseph told Plaintiff he was ok and walked away.  Soon after, Defendant Negent came to Plaintiff's cell door and saw and heard Plaintiff screaming in pain.  Negent said he would not get help for Plaintiff and threated to write Plaintiff a ticket if he did not get on his top bunk.  (*Id.*).  Next, Defendant Furqueron came to Plaintiff's cell.  Furqueron told Plaintiff that he called healthcare for him, but healthcare personnel never came to evaluate him.  (*Id.*).  Then, Defendant Sgt. Garrow arrived.  Plaintiff

begged Garrow for help.  Garrow said he talked to Joseph and Negent before they left at the end of their shifts, and that he would not get Plaintiff help from healthcare personnel and ordered that he get on his bunk or would get a ticket.  (*Id.* at PageID.5).  Plaintiff continued to beg Garrow for help, but Garrow then threatened to put Plaintiff in segregation and walked away.

At some point, Plaintiff was able to walk.  He approached an unspecified officer asking for help, but the officer refused to call for help.  That officer put Plaintiff in segregation.

While in segregation, Garrow again approached Plaintiff.  He told Plaintiff he could go back to his cell and use the bottom bunk, but if he did, Garrow would take all his property (TV, legal papers, etc.).  Garrow still refused to provide any healthcare.  Plaintiff stayed in segregation "in a cage the size of a dog cage" on the concrete floor for "another" eight hours.  (*Id.*).  While in segregation, Defendants Garrow and Ferqueron took all of Plaintiff's property in violation of due process, including trimmers, TV, and $100 in snacks.  Plaintiff knows it was the Defendants who took his property because he did not have a cellmate and all of his things were locked.  (*Id.* at PageID.6).

An unspecified sergeant later told Plaintiff that if he went to I-unit segregation, he would get Plaintiff medical attention; Plaintiff agreed.  (*Id.* at PageID.5).  Medical personnel evaluated Plaintiff some 24 hours after the incident.

The nurse noticed Plaintiff's swollen back and sent him to the hospital.  (*Id.* at PageID.6).

While in segregation, Defendant Keiser brought Plaintiff another inmate's property, which included clothes that had blood and other substances on them.  (*Id.* at PageID.7).  Then Keiser denied his request for health care while Plaintiff was on hunger strike.  (*Id.*).  Defendant nurse Florek did not follow the prison's hunger strike policy, which put Plaintiff's life in danger.  She was supposed to inform the Warden about the hunger strike and check on Plaintiff, which she refused to do.  (*Id.* at PageID.8).  After Plaintiff filed a grievance against her, she retaliated by making comments to Plaintiff such as "Oh Wilson I thought you died on hunger strike."  (*Id.*).  On March 11, 2023, when Plaintiff returned to prison after having stents placed in his heart at the hospital, Florek yelled at him and told him he should have died on hunger strike; Florek refused to stop harassing Plaintiff.  (*Id.* at PageID.8-9).

Against Defendant Biggs, Plaintiff alleges that he wrote a ticket against him and had his job taken away.  (*Id.* at PageID.10).  Biggs knew that taking Plaintiff's job would prevent Plaintiff from moving from a Level 4 to a Level 2 prison, and he did so in retaliation for writing grievances.  (*Id.*).

Defendant Nagy is sued because, as Warden, he knew the prison was not up to code and that J-Unit, where Plaintiff was housed, was supposed to have ladders

for top bunks.  Nagy was in charge of the prison and responsible for its condition.

He knew Plaintiff was placed in segregation for needing help yet did not aid

Plaintiff.  (*Id.* at PageID.11-12).  Plaintiff also alleges that Nagy and Keiser knew

he had lung issues but still put him in cells with inmates who smoked drugs.  (*Id.* at

PageID.13).

Plaintiff later alleges that Defendant Young transferred him to a prison "up

north" in retaliation for his grievances.  (*Id.* at PageID.15).  This transfer was

problematic for several reasons, including that he had a medical hold to stay in his

current prison because of his heart condition.  (*Id.*).

Plaintiff alleges that Defendant Landfair, who is in charge of health care at

JCF, was behind the denial of care of his back injury.  She also knew that Plaintiff

had a medical hold yet failed to prevent his transfer.  (*Id.* at PageID.21).

## III.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome under governing law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the

evidence, all facts, and any inferences that may be drawn from the facts in the light

most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . .” *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56.

Rather, “liberal treatment of *pro se* pleadings does not require lenient treatment of

substantive law.” *Durante v. Fairlane Town Ctr.*, 201 F. App’x 338, 344 (6th Cir.

2006). And “[o]nce a case has progressed to the summary judgment stage, . . . ‘the

liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-

13 (2002)] and [the Federal Rules] are inapplicable.’” *Tucker v. Union of*

*Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)

(quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.

2004)). The Sixth Circuit has made clear that, when opposing summary judgment,

a party cannot rely on allegations or denials in unsworn filings and that a party’s

“status as a *pro se* litigant does not alter [this] duty on a summary judgment

motion.” *Viergutz v. Lucent Techs., Inc.*, 375 F. App’x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App’x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he “failed to present

any evidence to defeat the government’s motion”).

B.     Exhaustion under the PLRA

Under the Prison Litigation Reform Act (“PLRA”), 42 U.S.C. § 1997e *et*

*seq.*, a prisoner may not bring an action “with respect to prison conditions under

section 1983 of this title, or any other Federal law . . . until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted

the provision to address the "outsized share" of prisoner litigation filings and to

ensure that "the flood of nonmeritorious claims does not submerge and effectively

preclude consideration of the allegations with merit."  *Jones v. Bock*, 549 U.S. 199,

203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the

quantity and improve the quality of prisoner suits[.]"  *Porter v. Nussle*, 534 U.S.

516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to

correct its own mistakes with respect to the programs it administers before it is

haled into federal court, and it discourages disregard of [the agency's] procedures."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation

omitted).

There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court."  *Jones*, 549 U.S. at 211.  The

prison's grievance process determines when a prisoner has properly exhausted his

or her claim.  *Id.* at 218 ("The level of detail necessary in a grievance to comply

with the grievance procedures will vary from system to system and claim to claim,

but it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion.").  Even where a prisoner has made some attempts to go

through the prison's grievance process, "[t]he plain language of the statute makes

exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

C.     Grievance Procedures at MDOC

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate

must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 25-2, PageID.110, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.112, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.113, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

>   D.   Analysis

>>   1.   Garrow, Keiser, Young, Landfair, and Nagy's Motion for Summary Judgment (ECF No. 25)

These Defendants argue that the claims against them have not been exhausted for different reasons, which are addressed in turn.

>>   a.   Garrow

Defendant Garrow contends that the sole grievance about not getting assistance or contacting healthcare on November 1, 2022, when Plaintiff fell trying to get to the top bunk, does not name him so it does not exhaust the claim.

Grievance JCF-2022-11-2298-17I ("JCF-2298") is about Plaintiff's back injury. He stated that he asked officer Negent for medical care, but Negent walked away. A non-party officer (Defendants concede that this grievance exhausts the claim against both Negent and Joseph) told Plaintiff he did not think Plaintiff needed medical attention. (ECF No. 25-3, PageID.167). Garrow is not named in the grievance or appeals. (*Id.* at PageID.164-68).

Plaintiff insists he "went through all three steps with Sgt. Garrow." (ECF No. 47, PageID.434). He argues that a rejected Step I grievance does not preclude an inmate from appealing the grievance through the appeals process, nor does it mean that the inmate failed to exhaust the claims raised in the grievance. (*Id.* at PageID.435). Plaintiff interprets Garrow's argument differently than Garrow presented it. Plaintiff says that Garrow argues that Plaintiff did not try to resolve the issue with Garrow before filing the grievance. According to Plaintiff, he could not try to resolve the issue because he was in segregation. (*Id.* at PageID.436).

Plaintiff attached three grievances with his argument about Defendant Garrow: JCF-2633, JCF-2697, and JCF-54. (*Id.* at PageID.443-454). Each grievance was rejected for failure to attempt to resolve them, so Plaintiff argues that he could not resolve them because he was in segregation. Even so, as Garrow notes, none of these grievances concern the back injury on November 1, 2022. In JCF-2633, Plaintiff complained that Garrow yelled and threatened Plaintiff every

11

time the "blond hair" "pill lady" was working. (*Id.* at PageID.443). In JCF-2697, Plaintiff stated that on December 26, 2022, the nurse who gives out pills told Plaintiff she hoped he never takes his medication after he refused medication on that instance. Then, the nurse and Garrow laughed. (*Id.* at PageID.449). Finally, in JCF-54, Plaintiff complained that on January 2, 2023, the nurse told Garrow that Plaintiff had complained about her. Garrow told her not to worry, that he would "get his ass." (*Id.* at PageID.451).

None of the incidents alleged in those three grievances relates to Garrow's alleged refusal to call for medical help after Plaintiff hurt his back on November 1, 2022. Thus, even if Plaintiff's failure to attempt to resolve those issues could be excused, those grievances do not exhaust the claim Plaintiff brought here.

The only grievance related to what took place on November 1, 2022, does not name Garrow. MDOC grievance policy requires inmates to name each person grieved. (ECF No. 26-2, PageID.86, ¶ S). The point of this rule is to give fair notice of the claims raised against the defendant prison official such that there is an opportunity to resolve it. But failure to name a defendant in a grievance is not always fatal to the claim against that defendant. When the facts in the grievance give the MDOC sufficient information to identify the person(s) involved, the prisoner fulfills the purposes of exhaustion even though he or she failed to identify the official by name. *See McMurray v. Dunnigan*, 2021 WL 2875710, at *4 (W.D.

Mich. June 7, 2021) (collecting cases). Nothing in this grievance would put prison officials on notice of a complaint against Garrow.

> b. Keiser, Young, and Landfair

Keiser, Young, and Landfair contend that Plaintiff did not identify them in any of his grievances, so no claims have been exhausted. (ECF No. 25, PageID.101). Plaintiff argues that he "exhausted all three steps the best way [he] could [he] was in segregation at the time." (ECF No. 47, PageID.462).

Plaintiff attached grievance JCF-2323 after his argument about exhausting administrative remedies against Keiser. This grievance, with an incident date of November 4, 2022, three days after he fell, is about his hunger strike. Plaintiff writes that his "rock officer" came to his door and said that because Plaintiff ate on November 3, 2022, Plaintiff would have to restart his hunger strike. Plaintiff accused the officer of forging documents about food intake. He also wrote that he was having chest pains but the officer said he hoped Plaintiff died and that Plaintiff would get no help. (*Id.* at PageID.468). In his Step II appeal, Plaintiff wrote that Defendant Keiser was his "rock officer." (*Id.* at PageID.466). Defendants did not address the import of Plaintiff's explanation in the Step II appeal that the grievance is about Keiser.

As mentioned above, failure to name an officer in a grievance is not always fatal to the claim when the facts alleged in the grievance would put prison officials

on notice of a claim against that officer.  Thus, naming a prison official for the first

time in an appeal can serve to exhaust the claim against that officer if the plaintiff

"presents facts in his Step I grievance that could place the prison on notice 'to

conduct an investigation even though the grievance did not necessarily identify the

particular individuals who might later be sued.'" *Rresch v. Rink*, 2023 WL

3128455, at * 4 (W.D. Mich. Mar. 17, 2023) (citation omitted); *see also Jones v.

Bock*, 549 U.S. 199, 219 (2007) ("The Sixth Circuit rule may promote early notice

to those who might later be sued, but that has not been thought to be one of the

leading purposes of the exhaustion requirement.").  Given that Keiser was

identified as the "rock officer" named at Step I, the undersigned concludes that this

grievance sufficiently names Keiser for purposes of this lawsuit.  The claim that

Keiser refused to summon medical help directly correlates with the similar claim in

the complaint.

Having established that JCF-2323 *could* exhaust the claim about denial of

medical care while on hunger strike, the next question is whether it does exhaust

the claim.

Defendants argue that JCF-2323 cannot serve to exhaust remedies because it

was denied as duplicative of JCF-2319, and JCF-2319 was rejected as untimely at

Step II.

The documents are rather confusing on these points.  Plaintiff's attachments do not include the decision at Step I on JCF-2323.  The Step II grievance response says the grievance was rejected at Step I as non-grievable, and also states that the grievance (perhaps the Step II grievance) was filed in an untimely manner.  (ECF No. 47, PageID.469).  It is unclear why the Step I grievance was rejected as non-grievable.  Complaining about an officer forging documents and denying healthcare are not the kinds of topics listed in MDOC's grievance policy as non-grievable.  (*See* ECF No. 25-2, PageID.108-09).  "[T]he Court is not required to blindly accept the state's application of the procedural rule." *Reeves v. Salisbury*, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012) (rejected on other grounds).

Defendants did not cite directly to a Step I rejection for JCF-2323, nor do they address the Step II response stating that the Step I grievance was rejected as non-grievable.  They assert it was rejected as duplicative of JCF-2319.  The evidence does not clearly support this assertion.  There is a Step I response included with the JCF-2323 documents dated November 9, 2022; this may be the document Defendants use to conclude that JCF-2323 was rejected as duplicative of JCF-2319.  (ECF No. 25-3, PageID.204).  The document states, "Your Step I grievance regarding Duplicative [JCF-2319] was received . . . and was rejected" as duplicative.  (ECF No. 25-3, PageID.204).  It is not clear that this responds to JCF-2323 when the response says it is in regard to JCF-2319.  The form then states that

15

future references to this grievance should use identifier JCF-2323. (*Id.*). If JCF-2323 was rejected as duplicative of JCF-2319, why would future references to the grievance be to JCF-2323 as it was considered duplicative. A reasonable interpretation of these documents, taken in Plaintiff's favor, is that JCF-2323 was not rejected as duplicative of JCF-2319, but that JCF-2319 was rejected as duplicative. Or, at the very least, there is a question of fact as to whether and why JCF-2323 was rejected at Step I.

To add to the confusion are the documents for JCF-2319. There are two Step I rejections. One of the rejections says that JCF-2319 is duplicative and that future references to the grievance should use identifier JCF-2344. (ECF No. 25-3, PageID.189). The other rejection form says JCF-2319 is rejected as raising more than one issue and because, after interviewing two officers, it was clear that Plaintiff was evaluated by healthcare. (*Id.* at PageID.194). With two rejections, the undersigned cannot say conclusively why JCF-2319 was rejected. A possible third rejection form is the one described above that says it is related to JCF-2319 and says future references will be to JCF-2323.

Another complication with JCF-2323 is the Step II rejection. The document states, without explanation, that it was untimely. (ECF No. 47, PageID.469). The appeal form says the appeal must have been received by November 29, 2022. Plaintiff's appeal was received on December 7, 2022. (*Id.*). It is unclear where the

November 29th deadline comes from. There is no clear Step I response in the record. If we take Defendant's assertion that the Step I response the "regarding Duplicative [JCF-2319]" response, the timing does not make sense. The response was signed November 9, 2022. (ECF No. 25-3, PageID.204). Plaintiff's appeal was due within ten business days of receiving the response. The Step I form says the response was returned to Plaintiff on November 9, 2022. (*Id.* at PageID.203). Ten business days from November 9, 2022, is November 23, not November 29, 2022. Of course, this does not matter much because Plaintiff's Step II appeal was received on December 7, 2022, after both dates. (*See* ECF No. 25-2, PageID.110, ¶ T ("Grievances and grievance appeals at all steps shall be considered filed on the date received by the Department.").

But it is not clear that there is a Step I response for JCF-2323 in the record. Without a response, prisoners have 25 business days from filing the grievance to appeal to Step II because inmates must file to Step II within ten business after receiving the Step I response, or if no response is received, within ten business days after the response was due. (ECF No. 25-2, PageID.112, ¶ DD). The Step I response is due within 15 business days after receipt of the Step I grievance. (*Id.* at PageID.111, ¶ Z). JCF-2323 was received at Step I on November 7, 2022. The response was due November 29, 2022. Ten business days later, December 13,

2022, the Step II appeal was due.  Plaintiff's December 7, 2022, appeal would be timely.

There are questions of material fact as to whether Plaintiff properly exhausted his claim that Keiser refused to find medical help for Plaintiff on November 4, 2022, while he was on hunger strike.  Plaintiff points to no other grievances naming Keiser, so any other claims against Keiser are unexhausted and should be dismissed.

As for Defendants Young and Landfair, Defendants argue they were never identified in a grievance that was appealed to Step III.  (ECF No. 25, PageID.101). Defendants are incorrect in their reply brief stating that Plaintiff did not address Young and Landfair in his response.  (ECF No. 48, PageID.504-05).  He did. Plaintiff argues that he could not have exhausted administrative remedies against Young because he was in the hospital for a month and because Young then had him transferred to another prison.  (ECF No. 47, PageID.474).  He argues the same for his claims against Landfair.  (*Id.* at PageID.477).  Even assuming Plaintiff's hospitalization essentially tolled his time to file a Step I grievance, the undersigned is unconvinced that the prison transfer precluded Plaintiff from filing a grievance about Young and Landfair's conduct.  The Sixth Circuit has held that "[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for purposes of exhaustion."

18

*Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) (citation omitted).

Plaintiff submitted no evidence showing that he tried to file a grievance against

Young or Landfair.  Accordingly, because Plaintiff did not file a grievance against

Young or Landfair, the claims against them should be dismissed for failure to

exhaust administrative remedies.

Plaintiff did not respond to Nagy's argument that he filed no Step III

grievance against him.  Instead, Plaintiff argued how Nagy allegedly violated his

constitutional rights.  (ECF No. 47, PageID.470-73).  Because Plaintiff failed to

exhaust administrative remedies on any claims against Nagy, Nagy should be

dismissed.

Defendants' Garrow, Young, Landfair, and Nagy's motion for summary

judgment should be granted, and Keiser's granted in part.

2.     MDOC Defendant Biggs' Motion for Summary Judgment

Plaintiff alleges that Biggs wrote a misconduct ticket against him in

retaliation for filing grievances knowing that the ticket would preclude a move to a

lower security prison.  By way of background, Defendant Biggs issued a Class I

misconduct ticket against Plaintiff on November 1, 2022, for disobeying a direct

order.  (ECF No. 31-2, PageID.371).  Plaintiff pleaded guilty of the charge on

November 7, 2022.  (*Id.* at PageID.370).  Plaintiff did not argue or mention that

Biggs wrote the ticket for retaliatory purposes in his response to the ticket or at the misconduct hearing.  (*See id.* at PageID.370, 372).

Biggs argues that Plaintiff did not exhaust his retaliatory ticket claim because he did not raise retaliation during the misconduct hearing process. Exhausting a claim about a misconduct ticket or the misconduct hearing process is slightly different from the exhaustion rules explained above.  Generally, these issues are non-grievable, so inmates cannot exhaust such claims in the three-step process.  (ECF No. 25-2, PageID.108-09, ¶ J).  "Instead, prisoners must exhaust and challenge misconduct tickets through a hearing, a rehearing or an appeal of the decision made at the hearing."  *Parker v. Turner*, 2022 WL 722192, at \*3 (E.D. Mich. Mar. 9, 2022) (citing *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011)).  The inmate must raise the allegation that the ticket was issued in retaliation against him at the misconduct hearing.  *Id.*  Failure to do so forecloses any avenue to challenge the ticket and the inmate has failed to exhaust administrative remedies.  *Id.*  Importantly for purposes of Biggs' motion, "[p]risoners who plead guilty waive their rights to contest that misconduct tickets were retaliatory and thus do not exhaust their retaliation claims."  *Wilson v. Mattis*, 2023 WL 3011140, at \*3 (E.D. Mich. Mar. 20, 2023) (citation omitted).

Plaintiff did not raise retaliation in his written response to the charge and the hearing report makes no mention of Plaintiff raising retaliation at the hearing.

Indeed, because he pleaded guilty to the charge, he waived the right to contest that the ticket was retaliatory.  Thus, the undersigned concludes that Biggs' motion for summary judgment should be granted.

        3.     Defendant Florek's Motion to Dismiss[1]

Defendant Florek moved to dismiss the claims against her under Federal Rule of Civil Procedure 12(b)(6) for Plaintiff's failure to exhaust administrative claims against her.  Despite moving for dismissal instead of summary judgment, Florek discusses the governing standards of review for both motions to dismiss and for summary judgment and attaches Plaintiff's grievance documents for review. (ECF No. 26, PageID.223-25).  "[S]ummary judgment under Rule 56 [i]s the more appropriate procedural vehicle to consider whether a prisoner had exhausted administrative remedies." *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 788 (E.D. Mich. 2016) (citing *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014)).  Because the undersigned is considering the grievance documents attached to Florek's motion, the motion will be treated as one for summary judgment.

Florek asserts that Plaintiff "has not properly exhausted any grievances against Nurse Florek, including JCF-2211-2344-28A/28E."  (ECF No. 26,

---

[1] The undersigned notes that Florek's motion is in violation of Local Rule 5.1(a)(1) which requires that papers presented for filing be in 14 point font.  Her motion appears to be in 12 point font, in some places even smaller.  (*See, e.g.*, ECF No. 26, PageID.230).  The undersigned will overlook this failure this time, but counsel for Florek is on notice that papers filed in this District must comply with Local Rule 5.1.

PageID.230).  This is the extent of Florek's argument.  Plaintiff responds that he filed this grievance through all three steps.  (ECF No. 47, PageID.455-60).

At Step I in JCF-2344, Plaintiff complained that on November 6, 2022, Nurse Florek improperly removed Plaintiff from hunger strike status after he ate a single meal.  He asserted that her action was "neglect."  (ECF No. 26-2, PageID.313).  There appears to be no Step I response in the record.  At Step II, the prison respondent wrote that the Step I grievance was rejected as non-grievable. (*Id.* at PageID.312).  It is unclear why this grievance was rejected as non-grievable. The grievance policy does not prohibit claims about health care mistakes or neglect.  The Step I rejection may be inaccurate.

Like JCF-2323, the Step II response here also says that the Step II appeal was untimely, without explanation.  (*Id.*).  Florek did not mention the Step II rejection in her brief.  Just like JCF-2323, discussed above, Plaintiff dated his Step II appeal November 29, 2022.  The prison received the appeal on December 7, 2022.  Without a Step I response in the record, the undersigned cannot confirm the date by which Plaintiff needed to submit his Step II appeal.  Taking the facts in Plaintiff's favor, the undersigned assumes no response was given, so the deadline by which to file at Step II was 25 business days (the prison has 15 days to respond, the prisoner has 10 days from the date the response was due to file the appeal) after

the prison received the Step I grievance (November 9, 2022)—December 15, 2022.

Plaintiff's December 7, 2022, appeal was timely.

Like the grievance against Keiser, there are questions of material fact

surrounding JCF-2344. That said, this grievance is limited in scope. It concerns

Florek's alleged mistake in taking Plaintiff off hunger strike status in early

November 2022 and not informing "Lansing" about Plaintiff's hunger strike. In

his complaint, Plaintiff maintains Florek is not following hunger strike policy

because she did not inform the warden about the strike nor check on Plaintiff

regularly. He also alleges that Florek retaliated against him and harassed him for

filing complaints. (ECF No. 1, PageID.8). Grievance JCF-2344 does not concern

retaliation or harassment, and Plaintiff pointed to no grievance that does. So those

claims should be dismissed for failure to exhaust administrative remedies. But

Florek has not demonstrated entitlement to judgment as matter of law on the claim

against Florek for taking Plaintiff off hunger strike status after a single meal in

early November 2022, and not informing Lansing about the hunger strike. That

claim should proceed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

Defendants' Garrow, Landfair, Nagy, Young, and Bigg's motions for summary

judgment and to dismiss (ECF Nos. 25, 31) be **GRANTED** and they should be

23

dismissed.  The undersigned further recommends that Defendants Keiser and Florek's motions (ECF Nos. 25, 26) be **GRANTED IN PART** and that some claims against them be dismissed.  If this recommendation is adopted, Defendants Joseph, Negent, Furqueron, Keiser, and Florek would remain.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:                                                 s/Curtis Ivy, Jr.
                                                      Curtis Ivy, Jr.
                                                      United States Magistrate Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on June 12, 2024.


                                                      s/Sara Krause
                                                      Case Manager
                                                      (810) 341-7850