UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE EDMOND WILSON,

      Plaintiff,                         Case No. 23-cv-10863

v.

                                    Hon. Sean F. Cox
JOSEPH ET AL.,                    United States District Court Judge

      Defendants.
_____/

**OPINION & ORDER
(1) ADOPTING IN PART AND REJECTING IN PART REPORT AND
RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND TO DISMISS (ECF No. 56); (2) GRANTING IN PART AND DENYING IN PART
MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 25); (3)
CONVERTING AND GRANTING DEFENDANT FLOREK'S MOTION TO DISMISS
(ECF No. 26); AND (4) GRANTING DEFENDANT BIGGS's MOTION FOR SUMMARY
JUDGMENT (ECF No. 31)**

In this prisoner civil rights case, Plaintiff Dwayne Wilson seeks to recover damages for

alleged misconduct by ten defendants, all of whom worked at a Michigan prison where Plaintiff

was incarcerated in 2022 and 2023. The Court now considers whether seven of the defendants

are entitled to summary judgment per the Prisoner Litigation Reform Act due to Plaintiff's

failure to exhaust administrative remedies against them under the prison's grievance procedure.

The magistrate judge to whom the Court referred all pretrial matters in this case

determined that Plaintiff did not exhaust any claims against five of the defendants: (1)

Christopher Biggs; (2) Steven Garrow; (3) Sirena Landfair; (4) Noah Nagy; and (5) Christopher

Young. However, the magistrate judge determined that Plaintiff exhausted some claims against

the other two defendants: (6) Alinda Florek and (7) Dan Keiser. The Court agrees that

Defendants Biggs, Landfair, Nagy, and Young are entitled to summary judgment in full. But the

Court disagrees with the magistrate judge's recommendations concerning Defendants Florek,

Keiser, and Garrow.

With respect to Defendants Florek and Keiser, two grievances in the record allege misconduct by them.  The magistrate judge determined that Florek and Keiser were not entitled to summary judgment with respect to claims that Plaintiff raised in those grievances because a reasonable jury could find that those grievances exhausted those claims.  However, the record shows that Plaintiff procedurally defaulted on any claims that he raised in those grievances and failed to object to his procedural defaults.  As such, Florek and Keiser are also entitled to summary judgment in full.

Concerning Defendant Garrow, three grievances in the record allege that he conspired with an unnamed pill nurse to retaliate against Plaintiff for his filing of grievances.  A reasonable jury could find that these grievances were improperly rejected under the prison's grievance procedure.  The magistrate judge determined that these grievances did not exhaust any claims against Garrow in any event because they did not raise claims that Plaintiff now pleads against Garrow in this action.  However, these grievances allege a civil conspiracy that tracks Plaintiff's pleadings against Garrow.  Consequently, Garrow is entitled to summary judgment with respect to any claims against him except for this civil conspiracy claim.

## BACKGROUND

Plaintiff, who is *pro se*, initiated this action in the U.S. District Court for the Western District of Michigan.  District Judge Paul L. Maloney determined that venue was proper in this District and transferred this case to this Court under 28 U.S.C. § 1406(a) in April 2023.  (ECF No. 3).  The undersigned District Judge subsequently referred all pretrial matters in this case to Magistrate Judge Curtis J. Ivy under 28 U.S.C. § 636(b)(1).  (ECF No. 14).

From at least late 2022 to early 2023, Plaintiff was incarcerated in the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan.  JCF is operated by the Michigan Department of Corrections ("MDOC").  In his complaint ("Complaint"), Plaintiff alleges that

JCF corrections officers and medical staff subjected him to cruel and unusual punishment and retaliated against him for filing grievances under MDOC's grievance policy.[1]  (ECF No. 1).

## I.       The Pleadings

The Complaint names ten defendants: (1) corrections officer Christopher Biggs ("Officer Biggs"); (2) nurse Alinda Florek ("Nurse Florek"); (3) corrections officer Jacob Furqueron ("Officer Furqueron"); (4) sergeant Steven Garrow ("Sergeant Garrow"); (5) corrections officer Stephen Joseph ("Officer Joseph"); (6) corrections officer Dan Keiser ("Officer Keiser"); (7) health unit manager Sirena Landfair ("HUM Landfair"); (8) warden Noah Nagy ("Warden Nagy"); (9) corrections officer Jerald Nugent ("Officer Nugent"); and (10) personal counselor Christopher Young ("PC Young").

The Complaint alleges the following facts.[2]  JCF staff knew that Plaintiff had suffered a prior injury that prevented him from being able to climb into the top bunk of a bunk bed, yet Plaintiff was nevertheless assigned to the top bunk in his cell when he arrived at JCF.  Plaintiff fell and injured his back while he was trying to climb into his top bunk at JCF on November 1, 2022.  As Plaintiff lay on the floor of his cell and called for help, Sergeant Garrow, Officer Joseph, and Officer Nugent refused to help and even taunted Plaintiff.

Plaintiff was transferred to segregation for his trouble.  The next day on November 2, 2022, Sergeant Garrow and Officer Furqueron packed up Plaintiff's cell under the guise of bringing his property to him in segregation.  Garrow instead stole Plaintiff's property.  The only items that Plaintiff received in segregation were clothes covered in blood and feces that Officer Keiser dropped off.

---

[1] Plaintiff also specifically discusses the Health Insurance Portability and Accountability Act ("HIPAA") in his pleadings.

[2] Only Officers Furqueron, Joseph, and Nugent have answered the Complaint.  (*See* ECF No. 63).

While in segregation, Plaintiff began a hunger strike to protest his treatment.  Officer Keiser and Nurse Florek ignored MDOC's hunger strike policy and Plaintiff's medical needs during that hunger strike.

Plaintiff filed a grievance against Nurse Florek for her misconduct, and "she got with Sgt Garrow and planned to get [Plaintiff]."  (*Id.* at 8).  On March 11, 2023, Florek "stated [sic] bring[ing] up all [Plaintiff's] medical information in front of Sgt. Garrow and another officer." (*Id.*).  When Plaintiff protested, "Sgt Garrow started talking crazy."  (*Id.* at 9).

Officer Biggs issued Plaintiff a citation in retaliation for his filing of grievances.  Plaintiff lost his job and the opportunity to be transferred to a lower-security area of JCF as a result of Biggs's citation.

Warden Nagy willfully ignored Plaintiff's placement in a cell where other inmates were smoking drugs, which exacerbated Plaintiff's lung condition.  Nagy also willfully ignored misconduct against Plaintiff by JCF staff in retaliation for Plaintiff's filing of grievances as well as JCF's generally unsafe conditions.  And Nagy knew or should have known about these issues because Plaintiff told Nagy about them in a letter.

PC Young caused Plaintiff to be transferred to another prison in retaliation for his filing of grievances, even though MDOC policy prohibited such a transfer due to Plaintiff's medical issues.  Young also read Plaintiff's legal mail and caused visitation requests by Plaintiff's family to be denied.

HUM Landfair used her position as JCF's medical chief to ensure that Plaintiff did not receive adequate medical treatment.  Landfair also knew that Plaintiff should not have been transferred to another prison and did not intervene to stop the transfer.

Plaintiff attached a number of documents to the Complaint: (1) records for thirteen grievances that he filed against JCF staff pursuant to MDOC's grievance policy from November 2022 through January 2023; (2) medical records for himself; (3) letters that Plaintiff claims he wrote to JCF staff; (4) receipts listing property that Plaintiff claims JCF staff stole from him; (5) an excerpt of MDOC Policy Directive 04.07.112; and (6) MDOC Policy Directive 04.06.120 (ECF Nos. 1-1 to 1-5).  Directive 04.07.112 is MDOC's property policy and Directive 04.06.120 is MDOC's hunger strike policy.

## II.    The Instant Motions

On February 12, 2024, Sergeant Garrow, Officer Keiser, HUM Landfair, Warden Nagy, and PC Young (together, "MDOC Defendants") moved for summary judgment.  (ECF No. 25). That same day, Nurse Florek moved to dismiss Plaintiff's claims against her under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 26).  And on March 11, 2024, Officer Biggs moved for summary judgment.[3]  (ECF No. 31).  Plaintiff subsequently filed a response ("Response") that jointly addresses the instant motions filed by MDOC Defendants, Florek, and Biggs (together, "Movants").  (ECF No. 47).

Movants and Plaintiff attached a number of documents to these filings.  MDOC Defendants and Nurse Florek attached the following materials to their motions: (1) MDOC Policy Directive 03.02.130 (effective March 18, 2019); (2) records concerning fifteen grievances that Plaintiff filed under MDOC's grievance policy from November 2022 through January 2023; and (3) an affidavit from Carolyn Nelson, an MDOC departmental analyst.  (ECF Nos. 25-2, 25-3, 26-1, 26-2).  Directive 03.02.130 is MDOC's grievance policy.

---

[3] The other three defendants—Officers Furqueron, Joseph, and Nugent—did not join the instant motions.

Officer Biggs attached records of a disciplinary proceeding regarding a citation that he issued to Plaintiff on November 1, 2022, as well as MDOC Policy Directive 03.03.105 as exhibits to his motion.  (ECF Nos. 31-2, 31-3).  Directive 03.03.105 is MDOC's disciplinary procedure.

For his part, Plaintiff attached the following materials to the Response: (1) the same grievance documents that he attached to the Complaint (ECF No. 47, PageID.443–54, 459–60, 466–69, 490–91); (2) the same property receipts that he attached to the Complaint (*id.* at 492–94); (3) MDOC's hunger strike policy (*id.* at 481–83); and (4) an excerpt of MDOC's property policy (*id.* at 495–96).  The grievance documents that MDOC Defendants and Nurse Florek attached to their motions include the same grievance documents that Plaintiff attached to the Response.

## III.    The Record

The materials that Movants attached to the instant motions and that Plaintiff attached to the Response to those motions are the "materials in the record" for the purposes of Federal Rule of Civil Procedure 56(c)(1).  No reasonable jury could disagree that these materials show the following facts relevant to the instant motions.

### A.    MDOC's Grievance Policy

Per MDOC's grievance policy, "[c]omplaints filed by prisoners regarding grievable issues as defined in [the] policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with [the] policy."  (ECF No. 25-2, PageID.107).  The policy refers to these steps as Steps I, II, and III

MDOC's grievance policy also contains a preliminary step, or *Step 0*, because inmates must "attempt to resolve [a grievable] issue with the staff member involved within two business

days after becoming aware of [the] issue, unless prevented by circumstances beyond his/her control."[4]  (*Id.* at 110).  Inmates may not file at Step I unless they have satisfied Step 0.

If an inmate has satisfied Step 0, then he or she may initiate a grievance at Step I by filing form CSJ-247A "[w]ithin five business days" of satisfying Step 0.  (*Id.*).  The form CSJ-247A must include "[d]ates, times, places, and names of all those involved in the issue being grieved." (*Id.*).  And "[g]rievances and grievance appeals at all steps [are] considered filed on the date received."  (*Id.*).

After receiving a Step I grievance, prison staff may summarily *reject* it on procedural grounds without considering its merits.  JCF staff summarily rejected some of Plaintiff's grievances at Step I for failure to satisfy Step 0; for being duplicative of an earlier-filed grievance; for containing multiple unrelated issues; and for being untimely.  JCF staff also *denied* some of Plaintiff's grievance on the merits at Step I.

Inmates may appeal a Step I response at Step II by filing form CSJ-247B "within ten business days after receiving the Step I response."  (*Id.* at 112).  At Step II, prison staff may summarily *reject* procedurally defective Step II appeals and JCF staff summarily rejected some of Plaintiff's Step II appeals as untimely.  JCF staff also summarily *upheld* Step I responses to Plaintiff's grievances at Step II and *denied* grievances filed by Plaintiff on the merits at Step II.

Inmates may appeal a Step II response at Step III by filing form CSJ-247B.  Plaintiff filed his Step III appeals using the original form CSJ-247B that he filed at Step II.  JCF staff *upheld* Step II responses to Plaintiff's grievances at Step III or *denied* Plaintiff's grievances on the merits at Step III.

---

[4] This requirement does not apply "if the issue is believed to fall within the jurisdiction of Internal Affairs."  (ECF No. 25-2, PageID.110).

B.      **Plaintiff's Grievances**

The record contains the forms CSJ-247A and B and Step I, II, and III responses for fifteen grievances that Plaintiff filed under MDOC's grievance policy from November 2022 through January 2023.  Plaintiff pursued all of these grievances through all three steps.  The Court discusses these grievances by their subject matter below.

i.      **Bunk Bed Grievances: Nos. 22-11-2274 and 22-11-2298**

Grievances No. 22-11-2274 ("Bunk Bed Grievance A") and No. 22-11-2298 ("Bunk Bed Grievance B") concerned misconduct in connection with Plaintiff's bunk bed.

***Bunk Bed Grievance A.***  The form CSJ-247A for Bunk Bed Grievance A states that Plaintiff was assigned a top bunk over his objections.  (ECF No. 25-3, PageID.217).  The form additionally states that Plaintiff attempted to resolve this grievance with the staff member involved on October 3, 2022.  However, the form does not state when the grievable incident occurred.  The form is date-stamped as having been received on November 1, 2022.

Bunk Bed Grievance A was rejected as untimely at Step I.  (*Id.* at 218).  Recall that inmates must file at Step I within five business days of satisfying Step 0.  Plaintiff's Step II appeal states, "I forgot to put the [d]ate on my step one grievance, but it was not late or exceeded the time limits."  (*Id.* at 215).  However, neither Plaintiff's Step II nor his Step III appeals address his failure to file at Step I within five business days of October 3, the day on which Plaintiff says he satisfied Step 0.  (*Id.*).  The Step I  response was upheld at Steps II and III.  (*Id.* at 214, 216).

At first blush, it is unclear whether the Step II response to Bunk Bed Grievance A rejects Plaintiff's Step II appeal as untimely or upholds the untimeliness determination that was made at Step I.  However, the form CSJ-247A for this grievance states that the Step I response was returned to Plaintiff on November 2, 2022 (*id.* at 217), and Plaintiff's Step II appeal is date-

stamped as having been received on November 9, 2022 (*id.* at 215).  Recall that inmates must file at Step II within ten business days of receiving a Step I response, and November 9 is no more than seven business days after November 2.  Thus, Plaintiff's Step II appeal was timely and the Step II response upholds the Step I response.

**Bunk Bed Grievance B.**  The form CSJ-247A for Bunk Bed Grievance B states that "Officer Stephin" and "Nugent" refused to help Plaintiff after he fell out of his bed on November 1, 2022.  (*Id.* at 167).  Plaintiff's Step II appeal clarifies that this grievance concerned misconduct by "officer Joseph and Negent."[5]  (*Id.* at 165).  This grievance was denied on the merits at Steps I, II, and III.  (*Id.* at 164, 166, 168).

### ii.    Law Library Grievance: No. 22-11-2275

The form CSJ-247A for Grievance No. 22-11-2275 ("Law Library Grievance") states that Plaintiff was improperly denied access to JCF's law library on October 27, 2022, and that he attempted to resolve the grievance on October 21, 2022.  (*Id.* at 212).  This form is date-stamped as having been received on November 1, 2022.

This grievance was rejected as untimely at Step I.  (*Id.* at 211).  Recall that inmates must satisfy Step 0 within two business days after he or she discovers a grievable incident.  Plaintiff's Step II appeal clarifies that he was previously denied access to the law library on a prior occasion *before* October 27, and that he attempted to resolve that prior denial at an earlier date.  (*Id.* at 210).  However, Plaintiff's Step II appeal does not address his failure to attempt to resolve the October 27 incident within two business days of becoming aware of it and the Step I response was upheld at Step II.  (*Id.* at 211).

---

[5] Officer Joseph's first name is "Stephen."  (ECF No. 7, PageID.9).

Plaintiff's Step III appeal states without further explanation, "My grievance was timely." (*Id.* at 210). But Plaintiff's Step II appeal was not denied as untimely. This is evident from the fact that the form CSJ-247A for this grievance states that Plaintiff received the Step I response on November 2, 2022 (*id.* at 212) and Plaintiff's Step II appeal is date-stamped as having been received on November 9, 2022 (*id.* at 210). Thus, Plaintiff's Step II appeal was timely because there are no more than seven business days between November 2 and 9, and the Step I response was upheld at Step II. And the Step II response was upheld at Step III. (*Id.* at 209).

### iii.  Hunger Strike Grievances

Grievances No. 22-11-2319 ("Hunger Strike Grievance A," or "HSG A"); No. 22-11-2323 ("Hunger Strike Grievance B," or "HSG B"); and No. 11-22-2344 ("Hunger Strike Grievance C," or "HSG C") all allege failures by JCF staff to comply with MDOC's hunger strike policy. As relevant with respect to these grievances, MDOC's hunger-strike policy states, "The Warden and health care staff shall be immediately notified whenever staff become aware that a prisoner has not consumed food for 72 continuous hours." (ECF No. 47, PageID.480). MDOC's hunger strike policy also requires JCF staff to provide ongoing medical care to inmates that are placed on hunger-strike status.

### a.  Hunger Strike Grievance A: No. 22-11-2319

The form CSJ-247A for Hunger Strike Grievance A alleges misconduct by "Officer Stephen" in connection with a hunger strike that Plaintiff began on November 1, 2022. (ECF No. 25-3, PageID.193). Plaintiff's Step II appeal clarifies that this grievance concerned misconduct by "officer Joseph." (*Id.* at 191).

Magistrate Judge Ivy determined that it was unclear whether this grievance was denied on the merits or rejected as duplicative of another grievance and the Court disagrees.[6]  The Step I response to HSG A is located at ECF No. 25-3, PageID.194, and it denies the grievance on the merits.  Plaintiff's Step II appeal was rejected as untimely (*id.* at 202), and the Step II response was upheld at Step III (*id.* at 200).

### b.      Hunger Strike Grievance B: No. 22-11-2323

The form CSJ-247A for Hunger Strike Grievance B alleges that Plaintiff missed nine meals as of November 4, 2023.  (*Id.* at 203).  The form additionally alleges that a "rock officer" did not tell health care that Plaintiff was on a hunger strike, forged documents to reflect that Plaintiff had eaten on November 3, 2022, and told Plaintiff that he hopes Plaintiff dies.  (*Id.*).  Plaintiff's Step II appeal clarifies, "Officer Keiser was my rock officer."  (*Id.* at 201).

The record contains a Step I response dated November 7, 2022.  (*Id.* at 204).  The first paragraph of this response states, "Your Step I grievance regarding Duplicative-JCF/2022/11/2319/17A was received on 11/7/2022 and was rejected due to the following reason: Your Grievance is being returned to you without processing for the issue is a duplicate of the grievance listed at the end of this paragraph that has already been processed."  (*Id.*).  This grievance number corresponds to Hunger Strike Grievance A.

However, the November 7 response does not list the number for any grievance at the end of its first paragraph.  The response's *second* paragraph states, "Any future references to this grievance should utilize this identifier: JCF / 2022 / 11 / 2023 / 28A."  (*Id.*).  This grievance number corresponds to HSG B.

---

[6] Nurse Florek raised this issue in her objection to Magistrate Judge Ivy's R&R.  (*See* ECF No. 61).

Magistrate Judge Ivy concluded that it was unclear whether the record contained any Step I response for HSG B.  However, every Step I response in the record contains the boilerplate language, "Any future references to this grievance should use this identifier," followed by the number for some grievance.  For every Step I response in the record except those that reject grievances as duplicative, the grievance number following this boilerplate language is the only grievance number listed in the response.  It follows that the November 7 response rejects HSG B as duplicative of HSG A.

The form CSJ-247A for HSG B states that Plaintiff received the Step I response on November 9, 2022, and Plaintiff's Step II appeal for HSG B is date-stamped as having been received on December 7, 2022.  (*Id.* at 201, 203).  Thus, Plaintiff's Step II appeal for HSG B was untimely because he filed it more than ten business days after he received the Step I response. Indeed, the Step II response for HSG B rejects Plaintiff's Step II appeal as untimely.  Plaintiff did not explain his untimeliness at Step II in his III appeal and the Step II response was upheld at Step III.  (*Id.* at 200).

Magistrate Judge Ivy determined that Plaintiff's Step II appeal for HSG B was timely because it was unclear whether the record contained any Step I response for the grievance. However, as discussed above, the Step I response for HSG B is located at ECF No. 25-3, PageID.204, and Plaintiff appealed that response at Step II more than ten business days after he received it.

### c.    Hunger Strike Grievance C: No. 22-11-2344

The form CSJ-247A for Hunger Strike Grievance C alleges that "Sgt Garrow" told JCF staff that Plaintiff had drunk milk, and that this qualified as a meal under MDOC's hunger strike policy.  (*Id.* at 188).  The form additionally alleges that "Nurse Florek" told a captain on

November 6, 2022, that Plaintiff no longer qualified for hunger strike status under MDOC's hunger strike policy because he had eaten a tray of food the day before. (*Id.*).

The record contains a Step I response dated November 9, 2022. (*Id.* at 189). The first and second paragraphs of this response are identical to the November 7 response to HSG B, except that the second paragraph of the November 9 response refers to HSG *C*. Thus, the November 9 response rejects HSG C as duplicative of HSG A.

Plaintiff's Step II appeal for HSG C was rejected as untimely at Step II. (*Id.* at 187). Plaintiff did not explain his untimeliness at Step II in his Step III appeal. (*Id.* at 186). The Step III response upholds the rejection at Step II. (*Id.* at 185).

Magistrate Judge Ivy determined that it was unclear whether the November 9 response referred to HSG C. Magistrate Judge Ivy also pointed to language from the Step II response for HSG C that stated, "The Step I grievance was rejected for the complaint being filed as a non-grievable issue." (*Id.* at 187). Magistrate Judge Ivy determined that if the November 9 response rejected HSG C for this reason, then that response was improper because "[t]he grievance policy does not prohibit claims about health care mistakes or neglect." (ECF No. 56, PageID.554).

The Court disagrees.[7] As explained above, the Step I response for HSG C is located at ECF No. 25-3, PageID.198. That response effectively rejects HSG C for raising a non-grievable issue because issues that an inmate already raised in an earlier-filed grievance are non-grievable. And the Step II response to HSG C recognized as much.

### iv.    Property Grievances: Nos. 22-11-2345 and 22-11-2435

Grievances No. 22-11-2345 ("Property Grievance A") and No. 22-11-2435 ("Property Grievance B") alleged property destruction.

---

[7] Nurse Florek also raised this issue in her objection to Magistrate Judge Ivy's R&R. (*See* ECF No. 61).

*Property Grievance A.*  The form CSJ-247A for Property Grievance A states that "Officer Carter and Fergerson" never gave Plaintiff a packing slip for property that was removed from his cell after he was sent to segregation on November 1, 2022.  (*Id.* at 183).  This grievance was denied on the merits at Steps I, II, and III.  (*Id.* at 180, 182, 184).

*Property Grievance B.*  The form CSJ-247A for Property Grievance B alleges that "officer Joseph" began throwing Plaintiff's property around and threatening Plaintiff when he tried retrieve his property.  (*Id.* at 198).  The form states that this incident occurred "on 11-1-22," but elsewhere lists "11-18-22" as the "Date of Incident."  (*Id.*).  The form is date-stamped as having been received on November 21, 2022.

JCF staff ostensibly interpreted the form CSJ-247A as alleging that the grievable incident occurred on November 1, 2022, because Property Grievance B was rejected as untimely at Step I.  (*Id.* at 199).  The rejection was upheld at Steps II and III.  (*Id.* at 195, 197).

### v.      Shower Grievance: No. 22-11-2347

The form CSJ-247A for Grievance No. 22-11-2347 ("Shower Grievance") states that "officer Joseph" refused to let Plaintiff take a shower on November 9, 2022.  (*Id.* at 208).  There is no Step I response for this grievance in the record, but it was denied on the merits at Steps II and III.  (*Id.* at 205, 207).

### vi.      Visitation Grievance: No. 22-11-2543

The form CSJ-247A for Grievance No. 22-11-2543 ("Visitation Grievance") states that Plaintiff learned on December 4, 2022, that his family's visitation request had been improperly denied.  (*Id.* at 177).  The form additionally states that Plaintiff "asked for Sgt" on December 4, 2022, and "was refused."  (*Id.*).

This grievance was rejected at Step I for failure to comply with Step 0.  (*Id.* at 178).  Plaintiff's Step II and III appeals do not address whether he attempted to resolve this grievance before he filed at Step I.  (*Id.* at 175).  The Step I response was upheld at Steps II and III.  (*Id.* at 174, 176).

### vii.    Pill Nurse Grievances

Grievances No. 22-11-2296 ("Pill Nurse Grievance A," or "PNG A"); No. 22-12-2633 ("Pill Nurse Grievance B," or "PNG B"); No. 22-12-2634 ("Pill Nurse Grievance C," or "PNG C"); No. 22-12-2697 ("Pill Nurse Grievance D," or "PNG D"); and No. 23-01-0054 ("Pill Nurse Grievance E," or "PNG E") all allege misconduct by Sergeant Garrow, an unnamed "pill nurse" who refused to give Plaintiff her name, and other individuals.

### a.    Pill Nurse Grievance A: No. 22-11-2296

The form CSJ-247A for Pill Nurse Grievance A alleges that "the pill nurse" who is "dating officer Stephen" refused to provide Plaintiff with medical treatment and her name on November 1, 2022.  (*Id.* at 162).  This form is date-stamped as having been received on November 2, 2022.  This grievance was denied on the merits at Steps I, II, and III.  (*Id.* at 159, 161, 163).

### b.    Pill Nurse Grievance B: No. 22-12-2633

The form CSJ-247A for Pill Nurse Grievance B alleges that Sergeant Garrow yelled at Plaintiff and threatened him on December 18, 2022, and that "every time this lady with the [b]londe hair the pill [n]urse, he start making threats."  (*Id.* at 157).  The form further alleges that Plaintiff attempted to resolve this grievance on December 18, 2022, by "ask[ing] for the capton [sic]," but he "was refused."  (*Id.*).  The form is date-stamped as having been received on December 19, 2022.

PNG B was rejected at Step I for failure comply with Step 0.  (*Id.* at 158).  Plaintiff's Step II appeal states, "Sgt Garrow is once again threatening me for reporting his girlfriend," and "I have file grievances on him before, I have reported him to the Warden, Dep Warden's, but NO one his [sic] stop him."  (*Id.* at 155).  The Step I response was summarily upheld at Step II.  (*Id.* at 156).  Plaintiff's Step III appeal states, "I ask for a capton [sic] if they refuse to get him what am I supposed to do."  (*Id.* at 155).  The Step II response was summarily upheld at Step III.  (*Id.* at 154).

### c.      Pill Nurse Grievance C: No. 22-12-2634

The form CSJ-247A for Pill Nurse Grievance C alleges that on December 18, 2022, Plaintiff told "[t]his pill nurse" not to talk about his medical information with Officer Joseph, and "[t]hen [s]he put her boyfriend Sgt. Garrow on [Plaintiff]" and "refused to tell her name so [Plaintiff] could write her up." (*Id.* at 172). The form is date-stamped as having been received on December 19, 2022.

PNG C was rejected at Step I for raising multiple issues. (*Id.* at 173). Plaintiff's Step II and III appeals do not address whether he raised multiple issues at Step I. (*Id.* at 170). The Step I response was upheld at Steps II and III. (*Id.* at 169, 171).

### d.      Pill Nurse Grievance D: No. 22-12-2697

The form CSJ-247A for Pill Nurse Grievance D alleges that on December 26, 2022, "[t]he nurse who give out the pills again was talking about [Plaintiff's] medical issues with Sgt Garrow and Joseph (Officer)," and Plaintiff "herd [sic] her and Sgt Garrow laughing with Officer Joseph." (*Id.* at 152). The form further alleges, "I ask for a capton [sic], or someone over Sgt Garrow so I did try to get help but I was refused." (*Id.*). The form is date-stamped as having been received on December 30, 2022.

PNG D was rejected at Step I for failure to comply with Step 0. (*Id.* at 153). Plaintiff's Step II appeal states, "I was denied help so I did try and resolve the issue." (*Id.* at 150). The Step I response was summarily upheld at Steps II and III. (*Id.* at 149, 151).

### e.      Pill Nurse Grievance E: No. 23-01-0054

The form CSJ-247A for Pill Nurse Grievance E states, "[O]n 1/3/23 Sgt Garrow and the [b]lond nurse was in healthcare the [b]lond nurse told Sgt Garrow that I been reporting her and Sgt Garrow, he stated I know don't worry I am going to get his ass." (*Id.* at 147). The form additionally states, "I ask for the capton [sic] was denied. Look [i]f I ask for some [sic] above

Sgt Garrow and is refused then I tried to resolve the issue I can't make them get me help.  Also I have report him to all three Dep. Warden's." (*Id.*).  The form is date-stamped as having been received on January 9, 2023.

PNG E was rejected at Step I for failure to comply with Step 0.  (*Id.* at 148).  Plaintiff's Step II appeal states, "I have resolve the issue or attempted to get help when I reported this to the Dep. Wardens." (*Id.* at 145).  The Step I response was summarily upheld at Step II.  (*Id.* at 146). Plaintiff's Step III appeal states, "I ask for the capton [sic], was refused.  I ask the Nurse and Sgt Garrow to stop talking about me and to leave me alone, but because I reported them he Sgt. Garrow is still coming after me." (*Id.* at 145).  The Step II response was summarily upheld at Step III.  (*Id.* at 144).

### viii.    Summary

Several grievances do not reasonably allege misconduct by Movants because they allege misconduct by other individuals.  Bunk Bed Grievance B (Officers Joseph and Nugent); Hunger Strike Grievance A (Officer Joseph); Property Grievance A (Officers Furqueron and "Carter"); Property Grievance B (Officer Joseph); and Shower Grievance (Officer Joseph) fit this rubric.

Other grievances reasonably allege misconduct by Movants.  Bunk Bed Grievance A; Law Library Grievance; Hunger Strike Grievances B and C; and Visitation Grievance fit this description.  However, JCF staff determined that Plaintiff defaulted on these grievances under MDOC's grievance policy and Plaintiff did not object to these determinations.

This leaves the Pill Nurse Grievances.  Pill Nurse Grievance A alleges misconduct by an unnamed pill nurse and an "officer Stephen."  Officer Joseph's first name is "Stephen," and Plaintiff alleges misconduct by an officer with this name at Step I for other grievances.  For these grievances, Plaintiff clarified that he alleged misconduct by Officer Joseph at subsequent steps.

17

However, Sergeant Garrow's first name is "Steven."  (ECF No. 7, PageID.9).  For PNG A, Plaintiff does not clarify whether "officer Stephen" refers to Officer Joseph or Sergeant Garrow.  PNG A also tracks Plaintiff's pleadings against Nurse Florek.

As with grievances such as Bunk Bed Grievance A, JCF staff determined that Plaintiff defaulted on PNG A under MDOC's grievance policy and Plaintiff did not object to his default.  The same is true for PNG C, which also alleged misconduct by the unnamed pill nurse as well as Sergeant Garrow.  However, the same is *not* true for PNGs B, D, and E, which likewise alleged misconduct by the unnamed pill nurse and Sergeant Garrow because Plaintiff *contested* his defaults with respect to these grievances.

Thus, PNGs B, D, and E allege misconduct by Sergeant Garrow and possibly Nurse Florek.  And Plaintiff may have preserved meritorious objections to his procedural defaults with respect to those grievances.  Upon closer examination, however, no reasonable jury could conclude that PNGs B, D, and E concerned misconduct by Nurse Florek.

Plaintiff's Step II appeal for PNG A is date-stamped as having been received in December 2022, and it alleges that the unnamed pill nurse should have had her name on her shirt.  The forms CSJ-247A for PNGs B–E likewise all allege misconduct by an unnamed pill nurse who refused to tell Plaintiff her name, and those forms were received in December 2022 and January 2023.  However, the form CSJ-247A for Hunger Strike Grievance C alleges misconduct by "Nurse Florek" and is date-stamped as having been received in *November* 2022.

If Plaintiff knew Nurse Florek's name in November 2022 when he filed at Step I for Hunger Strike Grievance C, then he would not have complained about not knowing Florek's name in December 2022 when he filed at Step II for PNG A.  Likewise, Plaintiff would not have left the pill nurse unnamed in the later-filed PNGs B–E.  It follows that PNGs B, D, and E did not concern misconduct by Florek.  The same is not true for Sergeant Garrow.

### C.    Officer Biggs's Citation

Officer Biggs cited Plaintiff for misconduct on November 1, 2022, and Biggs's citation was adjudicated in a Class I misconduct hearing under MDOC's disciplinary procedure. (ECF No. 31-2). And MDOC's grievance policy states that "a decision made in a Class I misconduct hearing" is not grievable because "[p]risoners are provided an appeal process for Class I decisions" under MDOC's disciplinary procedure. (ECF No. 25-2, PageID.108).

## IV.    The Report and Recommendation

Magistrate Judge Ivy issued a report and recommendation ("R&R") addressing the instant motions on June 12, 2024. (ECF No. 56). Magistrate Judge Ivy recommended that the Court grant MDOC Defendants' motion for summary judgment in part; convert Nurse Florek's motion to dismiss to a motion for summary judgment and grant it in part; and grant Officer Biggs's motion for summary judgment in full.

Magistrate Judge Ivy determined that the only claims against Movants that a reasonable jury could find for Plaintiff were his claims: (1) against Officer Keiser for "refus[ing] to find medical help for Plaintiff on November 4, 2022, while he was on hunger strike" (*id.* at 550); and (2) "against [Nurse] Florek for taking Plaintiff off hunger strike status after a single meal in early November 2022, and not informing Lansing about the hunger strike" (*id.* at 555).

Only Nurse Florek timely objected to the R&R. (ECF No. 61). Florek takes issue with Magistrate Judge Ivy's recommendation that a reasonable jury could find for Plaintiff on *any* claims against her and asks the Court to grant summary judgment for her in full.

Magistrate Judge Ivy's R&R is ripe for decision and the Court rules on it without a hearing. For the following reasons, the Court adopts Magistrate Judge Ivy's R&R in part; grants MDOC Defendants' motion for summary judgment in part; converts Nurse Florek's motion to dismiss to a motion for summary judgment and grants it in full; and grants Officer Biggs's motion for summary judgment in full.

19

**STANDARD OF REVIEW**

This Court reviews Magistrate Judge Ivy's recommendations regarding MDOC Defendants and Officer Biggs's motions for summary judgment de novo, regardless of whether any party objected to those recommendations. *See Roland v. Johnson*, 856 F.2d 764, 768–69 (6th Cir. 1988); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985). And if the Court agrees that Nurse Florek's motion to dismiss should be converted to a motion for summary judgment, then the same standard of review applies to Magistrate Judge Ivy's recommendation concerning Florek's motion. As discussed below, the Court construes Florek's motion to dismiss as a motion for summary judgment.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing a motion for summary judgment, the Court construes all facts and draws all reasonable inferences in the non-movant's favor. *See id.*

**ANALYSIS**

Movants all argue that the Prisoner Litigation Reform Act ("PLRA") bars Plaintiff's claims against them. The PLRA provides in relevant part, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Plaintiff does not dispute that his claims against Movants all arise under federal law.

The PLRA requires "[p]roper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Courts may not resurrect a procedurally defaulted claim "unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*."  *Id.* (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).  And "failure to exhaust is an affirmative defense under the PLRA."  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

MDOC Defendants and Nurse Florek argue that PLRA bars Plaintiff's claims against them unless Plaintiff exhausted those claims under MDOC's grievance policy.  MDOC Defendants and Nurse Florek additionally argue that the grievances in the record are the only grievances relevant to this action, and therefore that the PLRA bars any claims against them that those grievances did not exhaust.  Plaintiff does not meaningfully dispute these points.

For his part, Officer Biggs argues that MDOC's *disciplinary* procedure conferred the exclusive administrative remedy for Plaintiff's claim against him.  Biggs concludes that the question of whether the PLRA bars that claim thus turns on whether Plaintiff's exhausted it under MDOC's disciplinary procedure.  In the alternative, Biggs asserts the same argument as MDOC Defendants and Nurse Florek, *i.e.*, that MDOC's grievance policy and the grievances in the record control the exhaustion question.

As explained below, MDOC's grievance policy provided a remedy for Plaintiff's claim against Officer Biggs, and therefore the question of whether the PLRA bars Plaintiff's claims against Movants (including Biggs) turns on whether the grievances in the record exhausted those claims under MDOC's grievance policy.  Nearly all of Plaintiff's claims against Movants are unexhausted.  The sole claim that a reasonable jury could find in Plaintiff's favor is the civil

conspiracy claim against Sergeant Garrow that Plaintiff raised in Pill Nurse Grievances B, D, and E.[8]

## I.       Nurse Florek's Motion to Dismiss

With respect to Nurse Florek's motion to dismiss, Federal Rule of Civil Procedure 12(d) empowers this Court to "turn a motion to dismiss into a motion for summary judgment where the court is presented with materials outside the pleadings." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr.*, 203 F.3d 926, 931 (6th Cir. 2000); *see also* Fed. R. Civ. P. 12(b)(d).  And "[w]hether a district court must provide actual notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the facts and circumstances of each case." *Shelby Cnty. Health Care Corp.*, 203 F.3d at 931.

Here, Nurse Florek attached materials outside the pleadings to her motion to dismiss such as documents for the fifteen relevant grievances and MDOC's grievance policy.  MDOC Defendants attached the same materials to their motion for summary judgment.  Both Florek and MDOC Defendants rely on these materials in support of their argument that the PLRA bars Plaintiff's claims against them.  And Plaintiff filed a joint response to Florek's and MDOC Defendants' motions.  Thus, actual notice of conversion is not required.

Because the Court considers the materials that Nurse Florek attached to her motion to dismiss in ruling on that motion and nearly all of those materials are not in the pleadings,[9] the Court treats Florek's motion to dismiss as one for summary judgment under Rule 12(d).

---

[8] To the extent that Plaintiff pleads a claim under HIPAA, Movants are entitled to summary judgment for that claim because "HIPPA doesn't authorize a private cause of action." *Faber v. Ciox Health, LLC*, 944 F.3d 593, 596 (6th Cir. 2019).

[9] The only exceptions are the forms CSJ-247B and Step III responses for thirteen of the fifteen grievances in the record, which Plaintiff attached to the Complaint.

## II.     Exhaustion Under MDOC's Disciplinary Procedure

Plaintiff pleads that Officer Biggs issued a citation against him in retaliation for his filing of grievances, and Biggs cited Plaintiff for misconduct on November 1, 2022.  Biggs's citation was adjudicated in a Class I misconduct hearing under MDOC's disciplinary procedure.  Biggs contends that his November 1 citation is the citation referenced in the Complaint, and Plaintiff does not dispute this point.

Officer Biggs argues that the PLRA bars Plaintiff's claim against him because Plaintiff did not exhaust it during the hearing on Biggs's citation.  As such, Biggs concludes that MDOC's disciplinary procedure and not MDOC's grievance policy control exhaustion with respect to Plaintiff's claim against him.  Magistrate Judge Ivy agreed, but the Court disagrees.

In support of his argument, Officer Biggs relies on *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011).  There, the Sixth Circuit examined the December 19, 2003, version of MDOC's grievance policy, which stated that "'[d]ecisions made in [disciplinary] hearings' . . . are non-grievable and 'shall be rejected.'"  *Id.* at 694.  The Sixth Circuit determined that MDOC's grievance policy did not provide any remedy for the plaintiff-inmate's claim, which "relate[d] to the issuance of major misconduct reports."  *Id.*  The court concluded that the plaintiff's claim was barred by the PLRA unless he exhausted it under MDOC's disciplinary procedure.  *See id.*

Here, the relevant version of MDOC's grievance policy similarly states that decisions in Class I misconduct hearings are not grievable because MDOC's disciplinary procedure provides a remedy for such decisions.  However, Plaintiff does not plead misconduct by Officer Biggs in connection with the *decision* issued after the hearing on Biggs's citation.  Rather, Plaintiff pleads that Biggs improperly *issued that citation* in the first instance, and MDOC's grievance policy does not state that such conduct is non-grievable.  Thus, MDOC's grievance policy and not its disciplinary procedure controls whether the PLRA bars Plaintiff's claim against Biggs.

Officer Biggs argues in the alternative that the PLRA bars Plaintiff's claim against him because Plaintiff did not exhaust it under MDOC's grievance policy.  As discussed below, the Court agrees.

## III.  Exhaustion Under MDOC's Grievance Policy

The only disputed material fact that a reasonable jury could find for Plaintiff is that his civil conspiracy claim against Sergeant Garrow is not barred by the PLRA.  No reasonable jury could find that any other claims against Movants are not barred by the PLRA.

### A.  Irrelevant Grievances

Six grievances (Bunk Bed Grievance B, Hunger Strike Grievance A, Property Grievances A and B, Shower Grievance, and Pill Nurse Grievance A) did not concern misconduct by Movants.  As such, these grievances did not exhaust any claims against Movants regardless of whether they exhausted claims against other individuals.

### B.  Defaulted Grievances

Five grievances (Bunk Bed Grievance A, Law Library Grievance, Hunger Strike Grievances B and C, and Visitation Grievance) were rejected for procedural reasons and Plaintiff did not contest his procedural defaults at the next applicable step.  Consequently, these grievances do not exhaust claims against Movants regardless of whether they were properly rejected.

Magistrate Judge Ivy determined that Hunger Strike Grievances B and C exhausted claims against Movants.  Specifically, Magistrate Judge Ivy determined that HSG B exhausted a claim against Officer Keiser because it was unclear whether the record contained a Step I response to that grievance and whether Plaintiff's Step II appeal was properly rejected as untimely.  Magistrate Judge Ivy determined that HSG C exhausted a claim against Nurse Florek for the same reason.

24

However, HSGs B and C were rejected as duplicative of another grievance at Step I, and Plaintiff did not contest these defaults in his Step II appeals.  Plaintiff's Step II appeals for HSGs B and C were rejected as untimely, and Plaintiff did not contest his *double* defaults in his Step III appeals.  And these Step II responses were upheld at Step III.  Consequently, HSGs B and C do not exhaust claims against Officer Keiser, Nurse Florek, or any other Movants, regardless of whether they were properly rejected.

### C.    Pill Nurse Grievances B, D, and E

The remaining three grievances (Pill Nurse Grievances B, C, and E) concerned misconduct by Sergeant Garrow (but not against any other Movants) that tracks Plaintiff's pleadings against him.  These grievances were all rejected at Step I for failure to satisfy Step 0.  However, unlike the grievances discussed above, Plaintiff specifically challenged his procedural defaults in his Step II and III appeals for these grievances.  And a reasonable jury could find that Plaintiff's challenges have merit.

MDOC Defendants concede that PNGs B, D, and E concerned misconduct by Sergeant Garrow.  However, they argue that these grievances nonetheless do not exhaust claims against Garrow because Plaintiff procedurally defaulted on those claims for failure to comply with Step 0.  Recall that under MDOC's grievance procedure, Step 0 is satisfied if "the grievant . . . attempt[ed] to resolve the issue with the staff member involved . . . , unless prevented by circumstances beyond his/her control."[10]  (ECF No. 25-2, PageID.110).

Here, the forms CSJ-247A for PNGs B, D, and E state that Plaintiff asked for a sergeant or a captain and was refused.  And Plaintiff argued at Steps II and III that his requests for a

---

[10] Although Plaintiff argued in his Step II and III appeals for PNGs B, D, and E that he had satisfied Step 0, he did *not* argue that his compliance with Step 0 was not required because the grievances fell within the jurisdiction of Internal Affairs.  Thus, Plaintiff did not preserve this alternative ground for challenging his procedural defaults with respect to PNGs B, D, and E.

sergeant or a captain qualified as *attempts* to resolve the grievances under MDOC's grievance procedure, and that these attempts were thwarted by JCF staff.  A reasonable jury could find that these requests for a sergeant or a captain qualified as *attempts* to resolve PNGs B, D, and E, or else that the refusals by JCF staff to summon a sergeant or a captain were circumstances outside Plaintiff's control that prevented him attempting to resolve these grievances

MDOC Defendants argue in the alternative that PNGs B, D, and E do not exhaust claims against Sergeant Garrow because they "did not arise out of the November 1, 2022, incident" where Garrow allegedly refused to help Plaintiff after he fell out of his bunk bed.  (ECF No. 48, PageID.503).  Magistrate Judge Ivy agreed, but the Court disagrees.

Recall that Plaintiff pleads that Nurse Florek "got with" Sergeant Garrow and "planned to get [him]" in retaliation for his filing of grievances, and that Garrow subsequently "started talking crazy" to him.  (ECF No. 1, PageID.8, 9).  These allegations are tantamount to civil conspiracy,[11] *see Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985), and they track Plaintiff's allegations in PNGs B, D, and E.

Construing the record on the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff satisfied Step 0 with respect to PNGs B, D, and E.  Because the allegations in those grievances track the conspiracy claim that Plaintiff pleads against Sergeant Garrow, a reasonable jury could therefore find that this claim is not barred by the PLRA.

## CONCLUSION & ORDER

The parties do not genuinely dispute facts material to the question of whether Plaintiff's claims against Officer Biggs, Nurse Florek, Officer Keiser, HUM Landfair, Warden Nagy, and

---

[11] Plaintiff's allegation that Nurse Florek was involved in this conspiracy is arguably contradicted by PNGs A–E because those grievances alleged similar misconduct by the unnamed pill nurse, and the record shows that this unnamed pill nurse was *not* Florek.  The Court need not consider this issue, however, because Sergeant Garrow does not argue that this apparent pleading deficiency defeats Plaintiff's civil conspiracy claim against him.

PC Young are barred by the PLRA.  The same is true for Plaintiff's claims against Sergeant Garrow, except for Plaintiff's civil conspiracy claim against him.

Accordingly, **IT IS ORDERED** that Report and Recommendation on Defendants' Motions for Summary Judgment and to Dismiss (ECF No. 56) is **ADOPTED IN PART** and **REJECTED IN PART**.  The Court **ADOPTS** the R&R to the extent that it recommends that Defendants Christopher Biggs, Sirena Landfair, Noah Nagy, and Christopher Young are entitled to summary judgment in full.  The Court **REJECTS** the R&R in all other respects.

**IT IS FURTHER ORDERED** that MDOC Defendants' Motion for Summary Judgment on the Basis of Exhaustion (ECF No. 25) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** to the extent that it seeks summary judgment for Defendant Steven Garrow with respect to Plaintiff's civil conspiracy claim.  The motion is **GRANTED** to the extent that it seeks summary judgment for Defendants Dan Keiser, Sirena Landfair, Noah Nagy, and Christopher Young in full and summary judgment for Defendant Steven Garrow with respect to any claims against him except for Plaintiff's civil conspiracy claim.

**IT IS FURTHER ORDERED** that Alinda Florek's Motion to Dismiss Plaintiff's Complaint (ECF No. 26) is **CONSTRUED** as a motion for summary judgment under Federal Rule of Civil Procedure 12(d) and **GRANTED** to the extent that it seeks summary judgment for Defendant Alinda Florek.

**IT IS FURTHER ORDERED** that MDOC Defendant Biggs' Motion for Summary Judgment on the Basis of Exhaustion (ECF No. 31) is **GRANTED** to the extent that it seeks summary judgment for Defendant Christopher Biggs.

**IT IS SO ORDERED.**

Dated:  September 4, 2024                             s/Sean F. Cox
                                                     Sean F. Cox
                                                     U. S. District Judge